## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No. 24 Civ.  2420 |
| | ) | |
| v. | ) | |
| | ) | |
| REAL PROPERTY LOCATED AT | ) | |
| 1 CENTRAL PARK WEST, UNIT 32G, | ) | |
| NEW YORK, NEW YORK 10023 | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States of America, by its attorneys and in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, brings this complaint for forfeiture *in rem* and alleges the following:

## NATURE OF THE ACTION

1.      This is a civil action *in rem* to forfeit an asset involved in and traceable to an international conspiracy to launder funds embezzled from the state coffers of the Republic of the Congo ("Congo").

2.      President Denis Sassou Nguesso ("President Nguesso") has been in power in the Congo since 1979, except for an approximately five-year period between 1992 and 1997.  The corruption of President Nguesso's regime has been widely reported. As discussed in more detail below, this action concerns the misappropriation, theft, or embezzlement of hundreds of millions of dollars from the Congolese treasury, some of which was used for the purchase of a luxury apartment in the Southern District of New York for the use of President Nguesso's daughter, Claudia Lemboumba Sassou Nguesso, a/k/a Claudia Sassou Nguesso ("Sassou Nguesso"). That

1

property is Unit 32G in the Trump International Hotel & Tower ("Trump International") at 1 Central Park West, New York, NY 10023 (the "Defendant Asset").

3.     The United States seeks forfeiture of the Defendant Asset pursuant to 18 U.S.C. § 981(a)(1)(C), because the funds used to acquire it are traceable to violations of specified unlawful activities and U.S. law, that is, a foreign offense involving the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official, and the international transportation or receipt of stolen or fraudulently obtained property (18 U.S.C. § 2314), both of which constitute specified unlawful activities under 18 U.S.C. §§ 1956(c)(7)(B)(iv) and 1956(c)(7)(A), respectively.

4.     The United States also seeks forfeiture of the Defendant Asset pursuant to 18 U.S.C. § 981(a)(1)(A), because it was involved in one or more money laundering offenses in violation of 18 U.S.C. §§ 1956 and 1957.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

6.     Venue lies in this district, pursuant to 28 U.S.C. §§ 1355(b)(1)(A), because acts and omissions giving rise to the forfeiture took place in the Southern District of New York.

7.     Venue also lies in this district, pursuant to 18 U.S.C. § 1355(b)(1)(B) and 28 U.S.C. § 1395(b), because the Defendant Asset is located in the Southern District of New York.

## PEOPLE AND ENTITIES

8.     The Plaintiff is the United States of America.

9.     The Defendant Asset consists of real property located in Trump International at 1 Central Park West, Unit 32G, New York, NY 10023.

10.     President Nguesso is the president of Congo. He became president in 1979, following a series of coups, and has held that office since that time, except for an approximately five-year period between 1992 and 1997.

11.     Sassou Nguesso is President Nguesso's daughter. Between approximately 2013 and the present (the "relevant time period"), Sassou Nguesso was also at various times a member of parliament in Congo and the head of communications for President Nguesso.

12.     The Asperbras Group is a Brazilian conglomerate that operates in, among other sectors, the industrial, infrastructure, agribusiness, and energy sectors, undertaking, among other things, large-scale construction projects. The Asperbras Group was founded and is principally owned by brothers Jose and Francisco Colnaghi (the "Colnaghi Brothers").

13.     Jose Veiga ("Veiga") is a Portuguese businessman who functions as an intermediary between the Asperbras Group and President Nguesso's family.

## FACTUAL ALLEGATIONS

### I. The Laundering of Congolese State Funds Into a Cypriot Shell Corporation for the Benefit of Claudia Sassou Nguesso

14.     On or about November 8, 2013, Asperbras LLC, a Delaware-based subsidiary of the Asperbras Group, invoiced the Congolese Délégation Générale des Grands Travaux (abbreviated "DGGT"), a subpart of the Congolese Ministère de l'Aménagement du Territoire et de la Délégation Générale des Grands Travaux or "Ministry of Territorial Planning and General Delegation of Major Works," a public agency, for approximately EUR 491 million as partial payment for the construction of approximately 12 hospitals in Congo. At the time, EUR 491 million was worth approximately USD 658 million. On or about November 28, 2013, a Portugal-based bank account held by Asperbras LLC at the now defunct Banco Espirito Santo ("BES")

received a wire transfer in the amount of approximately EUR 491 million, with instructions referencing "DGT," an apparent reference to the Congolese Direction Générale du Trésor, or "Directorate-General of the Treasury," another public agency. Prior to this transfer, Asperbras LLC had less than three thousand dollars in its BES bank account.

15.     On or about December 4, 2013, following the transfer of funds to Asperbras LLC described above, Veiga incorporated Sebrit Limited ("Sebrit"), a Cypriot entity, which was wholly owned by Voxxi Limited ("Voxxi"), another Cypriot entity. Corporate documents list Veiga as the sole director and shareholder of Voxxi. In corporate documents, both Sebrit and Voxxi's principal business purpose is listed as investment and financial services, with no reference to the geophysical surveying Sebrit would later contract to carry out for a company controlled by Asperbras, *see infra*. However, under a pair of contracts signed on or about July 16, 2013, the true owner of Voxxi was Sassou Nguesso.

16.     The contractual arrangement described above is also reflected in a December 11, 2013 email from Veiga's son to Veiga, which attached a list of numerous shell companies apparently associated with a number of Congolese government insiders, including Sassou Nguesso and her brother, Denis-Christel Sassou Nguesso. In this attachment, Sebrit and Voxxi are listed under "Group C," which based on other correspondence is believed to be Sassou Nguesso. Another Cypriot entity, Gabox Limited ("Gabox"), is listed under "Group D," which based on other correspondence is believed to be Denis-Christel Sassou Nguesso. These groupings of shell companies are also laid out in a December 4, 2013 email from Veiga to Asperbras's CFO, Jose Mauricio Caldeira. In this email, Veiga is listed as the "representative" of both Sebrit and Gabox.

17.     On or about December 11, 2013, that is, approximately a week after Veiga's incorporation of Sebrit, Sebrit signed a contract with Energy & Mining Asp, a company

incorporated in the British Virgin Islands ("BVI"). In records provided to BVI, Energy & Mining Asp's ultimate beneficial owners are listed as the Colnaghi Brothers, and its business purpose is described as acting as a holding company for certain Asperbras Group entities. These contracts provided that Energy & Mining Asp would pay Sebrit approximately USD 19.5 million, comprised of an approximately USD 6.8 million payment upon completion of a "Geophysical Report" and an approximately USD 12.7 million payment for "search[ing] for new business to [*sic*] the client [Energy & Mining Asp]." However, upon information and belief, Sebrit did not provide significant services under the contract, let alone services worth USD 19.5 million. Rather, as discussed below, the contract was primarily or exclusively a mechanism to route Congolese state money through Asperbras to Sebrit for the personal enrichment of Sebrit's ultimate beneficial owner, Sassou Nguesso.

18.     In the week following the signing of the Sebrit-Energy & Mining Asp contract described above, a Brazilian bank, BES Investimento do Brazil SA ("BES Investimento") executed certain wire transfers.  First, on or about December 16, 2013, a BES Investimento account wired approximately EUR 35.8 million to a EUR-denominated bank account held by Energy & Mining Asp at Banco Internacional de Cabo Verde (formerly Banco Espirito Santo, "Banco Internacional"), which was opened that same day. Second, on or about December 18, 2013, a BES Investimento account wired approximately USD 31 million to a USD-denominated bank account held by Energy & Mining Asp at Banco Internacional.

19.     On or about January 6, 2014, approximately USD 15.2 million in Energy & Mining Asp's USD-denominated account at Banco Internacional was converted to approximately EUR 11.1 million and transferred into Energy & Mining Asp's EUR-denominated account. The same day, Energy & Mining Asp's EUR-denominated account wired approximately EUR 14.3 million

(valued at approximately USD 19.5 million) to Sebrit's EUR-denominated account at Banco Internacional, which had been opened on or about December 30, 2013.  Between on or about January 6, 2014 and November 18, 2014, Sebrit's EUR-denominated account received no additional deposits.  On or about January 6, 2014, Energy & Minin Asp's EUR-denominated account wired approximately EUR 33.4 million (approximately USD 44.7 million) to Gabox's EUR-denominated account at Banco Internacional, which was also opened on or about December 30, 2013.

## II. Use of the Laundered Funds to Purchase and Maintain the Defendant Asset for the Benefit of Claudia Sassou Nguesso

20.     Upon information and belief, Sebrit, Veiga, and/or Claudia Sassou Nguesso hired a U.S. law firm, K&L Gates, to purchase the Defendant Asset for the benefit of Sassou Nguesso, using a portion of the laundered funds and embezzlement proceeds described above for the purchase. The details of the purchase are provided below.

21.     On or about May 30, 2014, K&L Gates incorporated a New York entity called Ecree LLC ("Ecree") to serve as the nominal purchaser of the Defendant Asset. Ecree's registered address was K&L Gates's New Jersey office.

22.     On or about July 12, 2014, Ecree submitted a Purchase Application to the Trump International Management Corporation ("TIMC") to purchase the Defendant Asset. Ecree was listed as the "Applicant" on the Purchase Application. An attorney with K&L Gates was listed as "Applicant's Attorney." Sebrit was listed as the "Business or Employer" of the Applicant. "Claudia Lemboumba" was the sole name provided in the part of the application that asked for the "[n]ame of all persons who will reside in this unit."  Sassou Nguesso's full name is Claudia Lemboumba Sassou Nguesso. Finally, Veiga was listed as one of the two personal references on the Purchase Application.

6

23.     On or about July 17, 2014, Veiga and Sassou Nguesso exchanged emails about certain documentation Veiga needed from Sassou Nguesso to complete the purchase of the Defendant Asset. On or about July 21, 2014, Veiga and Sassou Nguesso exchanged text messages that appear to relate to who would be listed as the Defendant Asset's beneficial owner and/or occupant. Veiga and Sassou Nguesso initially decided that they would first try to list Sassou Nguesso as the Defendant Asset's beneficial owner and/or occupant and, if that was "refused," they would instead list Sassou Nguesso's cousin. Ultimately, however, Veiga and Sassou Nguesso decided that they could list Sassou Nguesso as the Defendant Asset's beneficial owner and/or occupant because TIMC told Veiga that it was "not a problem" and that the information was "only for the condominium building." On information and belief, Veiga and Sassou Nguesso were concerned that TIMC would reject Sassou Nguesso's purchase application if TIMC learned that Sassou Nguesso was a politically-exposed person.

24.     The purchase price of the Defendant Asset was USD 7.1 million, with USD 710,000 due as a deposit. On or about June 24, 2014, the USD 710,000 deposit was wired from Sebrit's EUR-denominated account at Banco Internacional (after being converted from approximately EUR 525,470) into the attorney trust account of another U.S. law firm, which represented the seller of the Defendant Asset.

25.     On or about July 28, 2014, approximately USD 6,525,000 was wired from Sebrit's EUR-denominated account at Banco Internacional (after being converted from approximately EUR 4,894,952) into a K&L Gates account at Bank of America. On or about July 31, 2014, approximately USD 6,491,770.14 of this money was wired from K&L Gates's account to a title insurance company, which then remitted the money to the seller's law firm to complete the purchase of the Defendant Asset.

26.     In sum, the money used to purchase the Defendant Asset was a portion of the approximately USD 19.5 million of Congolese state funds embezzled through the sham contracts between Sebrit and Energy & Mining Asp, and these embezzled funds were used to purchase the Defendant Asset for Sassou Nguesso's apparent personal enrichment.

27.     Following the purchase of the Defendant Asset, Veiga continued to maintain the Defendant Asset for the benefit of Sassou Nguesso. For example, between in or about June 2020 and in or about December 2022, approximately USD 135,207 in common area charges for the Defendant Asset were paid to a U.S.-based TIMC bank account out of bank accounts in Luxembourg, Portugal, and the United Arab Emirates in the name of Veiga's wife. In addition, between in or about March 2018 and in or about May 2020, approximately USD 112,454 in common area charges for the Defendant Asset were paid to TIMC out of a bank account held in the name of a Canadian corporation of which Veiga is the sole director, Costwolds Partners SA, Canada. On information and belief, these payments were in furtherance of the misappropriation and theft scheme alleged herein.

28.     On information and belief, the Defendant Asset has remained unoccupied since it was purchased in or about 2014. However, on or about November 18, 2014, Sebrit's EUR-denominated account at Banco Internacional transferred approximately EUR 397,884 to a Portuguese interior design firm and, on or about, November 25, 2014, Sassou Nguesso emailed TIMC authorizing Veiga's son to conduct what appears to be related design work at the Defendant Asset. As noted *supra*, there were no further deposits in Sebrit's EUR-denominated account following the EUR 14.3 million deposit made by Energy & Mining Asp on or about January 6, 2014 until on or about November 18, 2014.

**FOREIGN LAW BASIS FOR FORFEITURE**

29.     Misappropriation of public funds is a criminal offense under Congolese law, as enumerated by the Penal Code of Congo, including Articles 177 and 178.

30.     The Penal Code of Congo prohibits the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official, such as Sassou Nguesso during the relevant period. The Penal Code provides the following:

      a.     Article 177 prohibits government officials from "using their power of their ranks for corruption."

31.     The Constitution of the Republic of Congo also prohibits corruption and further defines corruption under Congolese law:

      a.     Article 53 of the Constitution provides: "The property of the State is sacred. Property in the public domain is inalienable, non-transferable, imprescriptible, and unseizable. Every citizen must respect and protect [the state property]."

      b.     Article 54 of the Constitution also provides: "Any act of sabotage, vandalism, corruption or squandering or denigration of public funds is prohibited and punished by the conditions laid down by law."

**FIRST CLAIM FOR RELIEF**

18 U.S.C. § 981(a)(1)(C)

32.     Paragraphs 1 through 31 above are incorporated by reference as if fully set forth herein.

33.     The Defendant Asset is property that constitutes, or is derived from, proceeds traceable to a foreign offense involving the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official (18 U.S.C. § 1956(c)(7)(B)(iv)), and the international

transportation or receipt of stolen or fraudulently obtained property (18 U.S.C. § 2314), which are specified unlawful activities under 18 U.S.C. §§ 1956(c)(7)(B)(iv) and 1956(c)(7)(A), respectively and, or a conspiracy to commit such offenses.

34.      Therefore, the Defendant Asset is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF

### 18 U.S.C. § 981(a)(1)(A)

35.      Paragraphs 1 through 34 above are incorporated by reference as if fully set forth herein.

36.      The Defendant Asset is involved in, or is traceable to property involved in, a transaction or attempted transaction in violation of section 18 U.S.C. § 1957. Specifically, the Defendant Asset is involved in or is traceable to a monetary transaction in criminally derived property of a value greater than $10,000, that is a foreign offense involving the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official (18 U.S.C. § 1956(c)(7)(B)(iv)), and the international transportation or receipt of stolen or fraudulently obtained property (18 U.S.C. § 2314).

37.      Accordingly, the Defendant Asset is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRD CLAIM FOR RELIEF

### 18 U.S.C. § 981(a)(1)(A)

38.      Paragraphs 1 through 37 above are incorporated by reference as if fully set forth herein.

39.     The Defendant Asset is involved in, or is traceable to property involved in, a transaction or attempted transaction in violation of section 18 U.S.C. § 1956(a)(1)(B)(i). Specifically, the Defendant Asset is involved in or traceable to a financial transaction involving the proceeds of specified unlawful activities, that is a foreign offense involving the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official (18 U.S.C. § 1956(c)(7)(B)(iv)), and the international transportation or receipt of stolen or fraudulently obtained property (18 U.S.C. § 2314), which transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of the specified unlawful activities in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

40.     Accordingly, the Defendant Asset is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## FOURTH CLAIM FOR RELIEF

### 18 U.S.C. § 981(a)(1)(A)

41.     Paragraphs 1 through 40 above are incorporated by reference as if fully set forth herein.

42.     The Defendant Asset is involved in, or is traceable to property involved in, a transaction or attempted transaction in violation of section 18 U.S.C. § 1956(a)(2)(B)(i). Specifically, the Defendant Asset is, or is traceable to, funds that were, transported, transmitted, or transferred to a place in the United States from or through a place outside the United States, knowing that the funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activities, that is a foreign

offense involving the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official (18 U.S.C. § 1956(c)(7)(B)(iv)), and the international transportation or receipt of stolen or fraudulently obtained property (18 U.S.C. § 2314).

43.     Accordingly, the Defendant Asset is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## FIFTH CLAIM FOR RELIEF

### 18 U.S.C. § 981(a)(1)(A)

44.     Paragraphs 1 through 43 above are incorporated by reference as if fully set forth herein.

45.     The Defendant Asset is involved in, or is traceable to property involved in, a conspiracy to launder the proceeds of specified unlawful activities in violation of 18 U.S.C. § 1956(h). Specifically, the Defendant Asset is involved in, or is traceable to funds that were involved in, a conspiracy: (1) to conduct and/or attempt to conduct financial transactions which involve the proceeds of specified unlawful activities, that is a foreign offense involving the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official (18 U.S.C. § 1956(c)(7)(B)(iv)), and the international transportation or receipt of stolen or fraudulently obtained property (18 U.S.C. § 2314); (2) to engage and/or attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activities, that is a foreign offense involving the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official (18 U.S.C. § 1956(c)(7)(B)(iv)), and the international transportation or receipt of stolen or fraudulently obtained property (18 U.S.C. § 2314), in violation of 18 U.S.C. § 1957; (3) to conduct and/or attempt to conduct financial transactions which involve the proceeds of specified unlawful

activities, knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activities; (4) to transport, transmit, or transfer to a place in the United States from or through a place outside the United States, knowing that such transportation, transmission, or transfer is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activities, that is a foreign offense involving the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official (18 U.S.C. § 1956(c)(7)(B)(iv)), and the international transportation or receipt of stolen or fraudulently obtained property (18 U.S.C. § 2314), in violation of 18 U.S.C. § 1956(a)(2)(B)(i).

46.     Accordingly, the Defendant Asset is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, Plaintiff, the United States of America, requests:

47.     The Defendant Asset be proceeded against according to the law and the rules of this Court, and that due notice be given to all the interested parties to appear and show cause why forfeiture should not be decreed.

48.     The Court, for the reasons set forth herein, adjudge and decree that the Defendant Asset be forfeited to the United States of America and disposed of in accordance with existing

laws, together with costs, and for such other relief as this Court deems proper and just.

Respectfully submitted,

DATED: March 29, 2024

DAMIAN WILLIAMS
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF NEW YORK

BY: _____

Benjamin A. Gianforti
Emily Deininger
Assistant United States Attorneys
26 Federal Plaza
38th Floor
New York, NY 10278
Telephone: (212) 637-2490 / -2472
benjamin.gianforti@usdoj.gov
emily.deininger@usdoj.gov

MARGARET MOESER
ACTING CHIEF
MONEY LAUNDERING & ASSET RECOVERY
SECTION

BY:    /s/ Joshua L. Sohn_____

Joshua L. Sohn, Trial Attorney
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Telephone: (202) 353-2223
joshua.sohn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## DECLARATION OF VERIFICATION

J. David Donaldson, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury that he is a Special Agent with the Federal Bureau of Investigations; that he has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to the best of his knowledge, information and belief; and that the sources of his information and the grounds of his belief are his personal involvement in the investigation, and conversations with and documents prepared by law enforcement officers and others.

Executed on March 29, 2024

_____
J. DAVID DONALDSON
Special Agent
Federal Bureau of Investigations