# **<u>EXHIBIT A</u>**

O6CVCOMC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   COMMISSIONS IMPORT EXPORT
     S.A.,
 4
                    Petitioner,
 5
                 v.                          19 MC 195 (KPF)
 6
     REPUBLIC OF THE CONGO
 7   and ECREE LLC,

 8                  Respondents.

 9   ------------------------------x
     UNITED STATES OF AMERICA,
10
                    Plaintiff,
11
                 v.                          24 Civ. 2420 (KPF)
12

13   REAL PROPERTY LOCATED AT
     1 CENTRAL PARK WEST, UNIT 32G,
14   NEW YORK, NEW YORK 10023,

15                  Defendant.            Premotion Conference

16   ------------------------------x

17                                        New York, N.Y.
18                                        June 12, 2024
                                          10:10 a.m.
19

20   Before:

21              HON. KATHERINE POLK FAILLA,

22                                        District Judge

23

24

25
```

O6CVCOMC

```
1                              APPEARANCES

2   GOULSTON & STORRS PC
         Attorneys for Commissions Import Export S.A.
3   BY:   CHARLES R. JACOB, III
         ISABEL P. SUKHOLITSKY
4
5   ASHCROFT LAW FIRM, LLC
         Attorneys for Respondent Republic of the Congo
6   BY:   MICHAEL J. SULLIVAN

7   NIXON PEABODY LLP
         Attorneys for Respondent Ecree LLC in 19 MC 195
8   BY:   ERIC M. FERRANTE

9   DAMIAN WILLIAMS,
         United States Attorney for the
10        Southern District of New York
    BENJAMIN A. GIANFORTI
11        Assistant United States Attorney

12  PRYOR CASHMAN LLP
         Attorneys for Ecree LLC in 24 Civ. 2420
13  BY:   JEFFREY E. ALBERTS
         AARON J. B. WILTSE
14

15

16

17

18

19

20

21

22

23

24

25
```

O6CVCOMC

```
 1              (Case called)
 2              THE DEPUTY CLERK:  Counsel, please state your name for
 3    the record, beginning with plaintiff.
 4              MR. GIANFORTI:  Good morning, your Honor.
 5              Ben Gianforti, for the government.
 6              THE COURT:  Okay.  Thank you very much.
 7              MR. JACOB:  Good morning, your Honor.
 8              Charles Jacob, for petitioner, Commissions Import
 9    Export.
10              MS. SUKHOLITSKY:  Good morning, your Honor.
11              Isabel Sukholitsky, also for petitioner.
12              THE COURT:  Thank you.
13              Let me ask this, Mr. Jacob and Ms. Sukholitsky:  For
14    this morning, is it your intention to let Mr. Gianforti sort of
15    take the laboring oar or something else?
16              MR. JACOB:  I think it makes sense for the government
17    to go first, your Honor.
18              THE COURT:  And you'll bat cleanup, as it were.
19              MR. JACOB:  Yes.
20              THE COURT:  Okay.  That's fine.
21              I don't want to offend you by directing questions in
22    the first instance to the government, but that is fine.
23              MR. JACOB:  No possible offense would be taken, your
24    Honor.
25              THE COURT:  Not yet at least.
```

O6CVCOMC

1          All right.  Thank you so much.

2          And for my friends at the back, thank you very much.

3          Go ahead.  You can introduce yourselves, please.

4          MR. ALBERTS:  In the civil forfeiture matter, Jeffrey

5    Alberts of Pryor Cashman LLC, appearing for Ecree.  And with me

6    here at counsel table is Aaron Wiltse, an associate at Pryor

7    Cashman.  Good morning, your Honor.

8          THE COURT:  Good morning and thank you.

9          Mr. Alberts, are you taking the lead this morning?

10          MR. ALBERTS:  With respect to the forfeiture matter, I

11   will be.

12          THE COURT:  Thank you.  All right.  I appreciate

13   knowing that.

14          All right.  Mr. Ferrante?  Mr. Sullivan?

15          MR. FERRANTE:  Good morning, your Honor.

16          Eric Ferrante from Nixon Peabody LLP, on behalf of

17   Ecree LLC in the other matter.

18          THE COURT:  Okay.  Thank you.

19          MR. SULLIVAN:  Good morning, your Honor.

20          Michael Sullivan, The Ashcroft Firm, on behalf of the

21   Republic of Congo.

22          THE COURT:  Thank you very much as well.

23          All right.  I suspect I'm going to get sort of the

24   cast of characters mixed up, and I certainly don't mean to.  We

25   have a couple of things to address this morning.

O6CVCOMC

1    There is — there was — an application from petitioners

2  to stay the petition.  It is opposed by the respondents to the

3  petition; and for the moment at least I've stayed it.  But I'll

4  listen to people while everyone is here.

5    There is a forfeiture complaint filed by the

6  government.  There's been discussion about a motion to dismiss.

7  And there's also some discussion about possibly amending and

8  whether that would or would not obviate the motion to dismiss.

9  My sense — and I would love to be more optimistic — is that

10 amendment will not.

11    If I could just offer the following thoughts to the

12 parties in play on the motion to dismiss:

13    It would be my preference to do the amendment before

14 the motion practice rather than have the moving party file a

15 motion to dismiss, then have the amendment as an opposition,

16 and then possibly file a second motion to dismiss.  I'll listen

17 to my friends at the back table to let me know whether there is

18 a world in which there would be no motion to dismiss, but I'm

19 just not sensing it.

20    So, Mr. Gianforti, let me start with you, please, sir.

21 And let's focus first on the motion to dismiss, and then I'll

22 hear from folks on the motion to stay.

23    Sir, as I understood it from one of the most recent

24 letters, perhaps it was the joint letter, there was a

25 high-level overview, I believe it was described as, provided to

O6CVCOMC

1    Ecree regarding the innocent owner defense.  And to the extent

2    I'm allowed to know — because there are some things shouldn't

3    know.  To the extent I'm allowed to know what the state of play

4    is, may I know.

5            MR. GIANFORTI:  So, your Honor, I think -- well, let

6    me start with the proposed amendment.  I think counsel may

7    disagree with me, but I think that we can pretty easily amend

8    this complaint to close the gap that they identified in the

9    flow of funds; so that's something that the government is

10    interested in doing.

11            THE COURT:  Do you understand what I'm saying, sir, as

12    to why I would prefer having an amendment prior to motion

13    practice?

14            MR. GIANFORTI:  Absolutely.  I think it obviates

15    unnecessary motion practice potentially.

16            THE COURT:  Or at least streamlines it.

17            MR. GIANFORTI:  Exactly.

18            THE COURT:  Okay.

19            MR. GIANFORTI:  I think the government's only concern

20    with respect to that, your Honor, is that it not be prejudiced

21    with respect to the typical finding that it would be afforded

22    under Rule 15.  So ordinarily the responding party would file

23    an answer or a Rule 12 motion.  And then under Rule 15, we

24    would get 21 days as of right to file an amended complaint.  So

25    if we could craft a timeline that sort of mimics that for the

O6CVCOMC

1    government to file an amended complaint.

2            THE COURT:  I'm sure I could be reasonable, yes.

3            MR. GIANFORTI:  That's our only concern.  I think it's

4    not a difficult fix for us to make to sort of make the

5    complaint make a little bit more sense.

6            THE COURT:  Fair enough.

7            And I don't know if the moving parties here would have

8    identified other flaws in your complaint other than the two

9    that were mentioned in the letter that I saw.  But I recognize

10   that there could be a world in which a more robust briefing

11   might show additional areas in which amendment could be

12   undertaken.  For me, however, the two things that were stated

13   either could or could not be the subject of amendments.  So

14   that was the issue that I had.  But okay, I understand.

15           Was there, in fact -- there was this June 5th meeting

16   or conference or some other way of discussing this?

17           MR. GIANFORTI:  With respect to the innocent owner

18   piece or the --

19           THE COURT:  Yes, sir.

20           MR. GIANFORTI:  So I sent counsel an email with some

21   high-level legal research showing why we thought that there was

22   no way that they could assert an innocent owner defense under

23   prevailing law in this circuit.  We argued at a high level that

24   they could neither prove that they were -- that Ecree was a

25   purchaser for value nor that it was an innocent purchaser for

O6CVCOMC

```
 1   value.  There's been no further discussions between the
 2   government and counsel with respect to that defense.  As far as
 3   I know, they continue to intend to assert it when the time
 4   comes.  And that's sort of the state of play with respect to
 5   that particular piece of the case.
 6              THE COURT:  Okay.
 7              If I may ask a question just for my own knowledge.
 8              There is a difference in time between the first of
 9   these matters and the second of these matters.  And if I can
10   put a finer point on it, I've had the miscellaneous matter
11   since 2019.  I have the pleasure of your complaint only as of
12   2024.  Any particular reason why it took this long to file this
13   complaint that I am allowed to know about?  And the answer may
14   be I'm not.  You're all really busy.
15              MR. GIANFORTI:  We're all really busy, that's one
16   answer.  But the global witness article that broke this whole
17   thing open was published in April of 2019.
18              THE COURT:  Because it's the basis of the
19   miscellaneous action that I have as well.
20              MR. GIANFORTI:  Exactly.
21              THE COURT:  At least I thought it was.
22              MR. GIANFORTI:  It essentially mirrors the allegations
23   that are contained in that article.
24              The FBI opened an investigation soon thereafter, and
25   my office got involved.  I think it was in 2019 as well.  But
```

O6CVCOMC

| | |
|---|---|
| 1 | frankly, your Honor, this case got handed down a couple of |
| 2 | times; I'm the third assistant on the case and it took as long |
| 3 | as it took. |
| 4 | THE COURT:  All right.  And that's where we are. |
| 5 | MR. GIANFORTI:  That's where we are. |
| 6 | THE COURT:  Okay.  Thank you. |
| 7 | Mr. Alberts, should I be directing my questions to you |
| 8 | now, sir? |
| 9 | MR. ALBERTS:  Yes, your Honor. |
| 10 | THE COURT:  Okay. |
| 11 | At this time, sir, is it still your client's intention |
| 12 | to move to dismiss? |
| 13 | MR. ALBERTS:  Yes. |
| 14 | THE COURT:  On both bases or something else? |
| 15 | MR. ALBERTS:  Yes. |
| 16 | THE COURT:  Okay.  Do you or at least will you not |
| 17 | vehemently oppose my suggestion that the government amends |
| 18 | first and then you file your motion papers? |
| 19 | MR. ALBERTS:  I think it's a great idea. |
| 20 | THE COURT:  Okay. |
| 21 | Are there other arguments that might surprise me or |
| 22 | are they basically the ones that are outlined in your premotion |
| 23 | letter? |
| 24 | MR. ALBERTS:  Right now we're focused on these |
| 25 | arguments, your Honor. |

O6CVCOMC

```
 1              THE COURT:  Okay.

 2              And I'm imagining that your communications with the

 3    government regarding the innocent owner defense have not

 4    changed your position with respect to it.

 5              MR. ALBERTS:  We're looking into the factual issues

 6    that they raised.

 7              THE COURT:  Okay.  That's very open-minded of you.

 8    Okay.  No, that's fine.

 9              I'm just trying to -- let me ask this question:  I'm

10    happy to set a schedule now for amending and moving to dismiss.

11    I'm also happy to let the parties meet offline outside of this

12    courtroom or whenever and get back to me in a week or so with a

13    proposed schedule.  What's your preference?

14              MR. ALBERTS:  I'm happy to do it either way.

15              THE COURT:  Everybody is very agreeable.

16              Okay.  Mr. Gianforti?

17              MR. GIANFORTI:  Same, your Honor.  I think we'll be

18    flexible.

19              THE COURT:  Okay.

20              Is there anyone else here who wants to be heard on

21    this motion to dismiss practice?  My sense is no one else is

22    involved in that.

23              Okay.  Then let's do this:  Mr. Gianforti, how much

24    time do you want, please, to amend?

25              MR. GIANFORTI:  I think I sort of had it in my mind
```

O6CVCOMC

1  that it would probably take the defense no longer than a week

2  to file this motion to dismiss; it's pretty discrete given the

3  issues they've identified.  And so you sort of advance 21 days

4  beyond that, I was thinking sort of in the neighborhood of four

5  weeks, which I think will be more than enough time.

6          THE COURT:  One moment, please, sir.

7          July 12th please?

8          MR. GIANFORTI:  That's my birthday.  I love it.

9          THE COURT:  It's the way you didn't know you wanted to

10  spend your birthday.  That's fine.  Thank you.

11          Okay.  With the amendment in on the 12th, Mr. Alberts,

12  when would you like to file your opening brief?  And I'm not

13  trying to wreck your or your colleagues' summer vacation plans.

14          MR. ALBERTS:  August 2nd, your Honor.

15          THE COURT:  I'm sorry?

16          MR. ALBERTS:  August 2nd.

17          THE COURT:  August 2nd.

18          All right.  Mr. Gianforti?

19          MR. GIANFORTI:  I think two weeks would be more than

20  enough, so maybe the 16th of August.

21          THE COURT:  Okay.

22          And may I have the reply, if any, on the 23rd,

23  Mr. Alberts?

24          MR. ALBERTS:  Your Honor, as it happens, I am out that

25  entire week, the 19th through the 23rd; so I would ask for the

O6CVCOMC

1    30th.

2              THE COURT:  The 30th for the reply.

3              All right.  Thank you.

4              And Mr. Alberts, can I ask you please to, in your --

5    with whatever schedule you want, sir, to obtain a transcript of

6    this conference.  Because when I have the briefing, I'll also

7    have whatever substantive discussions we had today.  Thank you.

8              Okay.  Mr. Jacob, perhaps I could turn to you now,

9    sir.  There is the motion to stay which either is or is not

10   related to the government's forfeiture practice.  I think what

11   I understood was that your client was considering going by way

12   of a remission petition instead.

13             MR. JACOB:  Yes, your Honor.  Let me address that.

14             THE COURT:  Please.

15             MR. JACOB:  As you've pointed out, these cases were

16   brought almost five years apart.  We have diligently pursued

17   our turnover proceeding, which is in aid of two long-standing

18   judgments of this Court, which, with interest, total something

19   like a billion dollars.

20             The government has stepped in and, in one sense, we

21   welcome that their investigation has vindicated our factual

22   allegations.  That's how we view it.  But in discussions with

23   the government, they made clear that their judgment of

24   forfeiture, if and when they obtain it, will take priority over

25   our judgment lien under state law.  And even though we filed

O6CVCOMC

1    first by almost five years, I have been educated as to 18

2    U.S.C. 981(f).  We sometimes learn things late in life, your

3    Honor, and this is one thing that I learned.  And if the

4    government obtains a judgment of forfeiture, it relates back to

5    the time of the commission of the underlying crime.

6            And without getting too deeply into the weeds, since

7    the condo in question was purchased with proceeds, when

8    something is purchased with proceeds, it is literally

9    impossible to get in front of the government in terms of

10   priority because the crime by definition has already been

11   committed.  So here we are.

12           There are pending motions to dismiss before your Honor

13   in the turnover proceeding.  If you deny them, we will have to

14   spend resources pursuing a case that is essentially moot,

15   because our judgment will have no effect if the government also

16   wins.  In other words, to say it a little differently, if both

17   we and the government win, it's a completely Pyrrhic victory

18   for our client.

19           THE COURT:  You win, but you're still second.

20           MR. JACOB:  Yeah.  We're still relegated to a petition

21   for remission because the government literally takes title

22   under 18 U.S.C. 981(f).  That's what it says.  The government

23   takes title as of that time.

24           So if you deny the respondent's motion in our turnover

25   proceeding, we are faced with the specter of wasting resources:

O6CVCOMC

1   your resources, your clerk's resources, our resources, our

2   money, for no purpose.  If you grant their motion, our client

3   would be compelled to appeal, and we'll be wasting resources on

4   the appeal, and we'll be wasting resources of the Court of

5   Appeals, and those judges and those clerks.  So there's only

6   one thing that makes sense here, your Honor, which is to hold

7   our case in abeyance pending further developments in the

8   government's case, just as you said in the order you entered

9   recently.

10          THE COURT:  Yes.

11          And let me trace that out to make sure I still

12   understand it correctly.

13          If the government is successful, you file a petition

14   for remission, and what happens with the '19 case?  Are you

15   dismissing it?

16          MR. JACOB:  Well, in that case, I think that probably

17   would be what we would do, sure.  Then the mootness would be --

18   would have become concrete, if you will, for want of a better

19   term.

20          THE COURT:  You've seen obviously the May 31st letter

21   from the Ashcroft firm responding to your request to stay, and

22   the argument there that they may as well then go ahead and

23   dismiss it now.  But you're keeping it open on the possibility

24   that the motion to dismiss or a later motion in the 2024 case

25   would prove successful, and you don't want to lose your place

O6CVCOMC

1    at that point.

2                MR. JACOB:  Exactly, your Honor.  I can't say it

3    better than that.

4                THE COURT:  Oh, no, I'm sure you could, but thank you.

5                All right.  I do appreciate — and I'm sure my clerk

6    appreciates you calling him out for saving of resources.  So

7    thank you for that.

8                But let me hear you on anything else before I hear

9    from the folks at the back table.

10               MR. JACOB:  Well, just one other point.

11               The letter I sent was a suggestion of mootness.  I

12   felt it was my duty as an officer of the Court to bring to your

13   Honor's attention the somewhat unusual posture that we found

14   ourselves in.  So that's why we sent the letter when and saying

15   what we did.  Nonetheless, now we've had the chance to be

16   heard.  Thank you for taking the time to hear our point of

17   view.  Because, to be clear, I have a very disappointed and

18   frustrated client.

19               THE COURT:  Oh, either way.

20               MR. JACOB:  One way of looking at this is that the

21   government has just stepped right in front of us at the

22   eleventh hour.  But another way to look at it is that's their

23   right.  They are the government; they have the rights they

24   have.  We've looked at the statute, we've looked at the cases.

25   And we really do not want to waste anybody's time or resources;

O6CVCOMC

```
1    we want to hold this in place pending further developments in

2    the government's case.

3         THE COURT:  If I could just ask you to comment on

4    something in Mr. Sullivan's letter as well, sir.  It's on, I

5    believe, the second page.  It's the paragraph that begins with

6    the word "Fourth."

7         The suggestion here is that I'm being distracted, in

8    particular, from the fact that the arguments in the forfeiture

9    matter are different from the arguments in your turnover

10   action.  Do you agree?  Does it matter?

11        MR. JACOB:  I don't think it matters because the

12   government and a private litigant are entitled to and should be

13   expected to have different theories, your Honor.

14        We and the government rely on essentially the same

15   facts.  However, there are some differences in legal theories,

16   but that's allowed under the law.  The government has a

17   statutory framework that it operates under; and a private

18   litigant has a framework of case law and sometimes state law —

19   we certainly rely on state law — that we operate under.  So I

20   don't think you're being distracted other than by

21   Mr. Sullivan's letter, frankly.

22        THE COURT:  I won't say that, but okay.  I understand

23   the point.  Thank you.  Okay.  Thanks.

24        Perhaps, Mr. Sullivan, I could hear from you now.

25        Thank you, sir.
```

O6CVCOMC

1      MR. SULLIVAN:  Thank you, your Honor.

2          Let me just begin by suggesting to the Court that the

3  government's investigation has not vindicated the petitioner's

4  claim.  The government has conducted, as I understand, no

5  investigation.  What they've done is they have done just what

6  the petitioner has done; they relied on a global witness news

7  story and then claimed those to be facts.

8          THE COURT:  Let me just pause there.

9          I want to hope -- I'm going to hope — just put this

10  into the record — that the government has done more than

11  blindly accept a third-party article without examining the

12  facts and doing some diligence of their own.  But I won't force

13  Mr. Gianforti to answer that right now.

14          Go ahead, Mr. Sullivan.  Keep going.

15          MR. SULLIVAN:  I would hope the same to be true as

16  well, your Honor.

17          THE COURT:  He knows I'll be sad.  And he'll have to

18  see me in other cases; so, I mean, it's in his interest to not

19  make me sad.  But go ahead.

20          MR. SULLIVAN:  Well, your Honor, as you said at the

21  outset, this claim has been pending before this Court since

22  2019, over five years.  And when the Republic of Congo first

23  entered an appearance, it asked the Court for some relief as it

24  related to a default that had been issued against the republic.

25  The petitioner objected to that and claimed that the petitioner

O6CVCOMC

1    would be prejudiced by any further delays in the matter.

2              Here we are five years later, your Honor --

3              THE COURT:  But I gave you that.  I allowed you in.

4              MR. SULLIVAN:  You did.

5              THE COURT:  Now you're saying I should have -- you're

6    not saying I should have listened to him back then.

7              MR. SULLIVAN:  Absolutely not.

8              THE COURT:  I should just listen to him now, the

9    argument he's not making?

10              MR. SULLIVAN:  No.  I'm suggesting, your Honor, you

11    should not have listened to him then and you should not listen

12    to him now.

13              THE COURT:  Exactly.

14              And perhaps you recognize the inconsistency in the

15    argument you're making to me, but keep going.

16              MR. SULLIVAN:  I think it's consistent, your Honor,

17    respectfully.

18              So here we are five years later, your Honor.  And

19    there's been a tremendous amount of briefing that's taken

20    place.  I suspect that the Court was on the cusp of making a

21    decision concerning the motion to dismiss.  It was the third

22    attempt by the petitioner to try to cure a defective petition

23    twice filed before.

24              We believe, as we've indicated in our pleadings, that

25    there is not subject matter jurisdiction by the Court.  There's

O6CVCOMC

1    nonconclusory allegations by the petitioner and the petition

2    should be dismissed.  The Republic of Congo will be prejudiced

3    by any further delays in terms of keeping this matter stayed.

4    And a decision by the Court as it relates to this particular

5    petition will have no impact in terms of the government's claim

6    in theory as it relates to the asset forfeiture.

7            If the government is correct, as Mr. Jacob has said,

8    then the government stands first.  If the government is

9    incorrect, and Ecree is an innocent owner, then there again,

10   the petitioner's claim will not be successful in this case.

11           So either way, your Honor, I think the Court should

12   rule on the five-year-old petition and make a decision

13   concerning the motion to dismiss.  If it's dismissed, if

14   Mr. Jacob feels that it's worthy of an appeal, then he should

15   take it.  And if it's not, your Honor, then the Republic of

16   Congo obviously will assess its position at that point in time.

17   But to ask for any further delays I think is unnecessary since

18   all the briefing has been done for the Court.

19           THE COURT:  Thank you, sir.

20           Anything else you'd like me to know?

21           MR. SULLIVAN:  No.  Thank you, your Honor.

22           THE COURT:  Okay.  Thank you.

23           Mr. Ferrante, do you want to be heard at all?

24           MR. FERRANTE:  Yes, please, your Honor.

25           I didn't have an opportunity, unlike Mr. Sullivan, to

O6CVCOMC

1   submit a letter in response to the petitioner's request for a

2   stay.  And the Court directed it did not seek any further

3   communication so I did not submit anything.  But we are

4   prepared to join in that letter, we support all the arguments,

5   and I think they apply equally to Ecree.

6           The one point in addition that I would make, because

7   it seems to me that a request for a stay at this point in the

8   proceedings is premature.  There's pending motions to dismiss

9   that can be decided.  How the Court rules on those motions may

10  impact the reasonableness or the necessity of a stay.  But

11  until those are decided --

12          THE COURT:  May I understand that point, sir?

13          MR. FERRANTE:  Sure.

14          If the Court were to grant the motions, the petition

15  goes away.  As Mr. Sullivan stated, it has no impact on the

16  civil forfeiture action; it has no impact on the petitioner in

17  our case on its right to participate in and make a claim in the

18  government's civil forfeiture action.  And there would be

19  nothing left to stay; there would be no case.

20          If they feel it's necessary to pursue an appeal, they

21  can do that.  I believe there are mechanisms in place to stay

22  or at least prolong the period of time by which they would have

23  to take that appeal.

24          But if the Court were to grant the motion, perhaps at

25  that point there's a discussion to be had as to whether a

O6CVCOMC

```
1    stay -- excuse me, if the Court were to deny the motions,

2    perhaps there's a discussion to be had at that point whether a

3    stay is appropriate.  But at this point in time, pending

4    motions to dismiss that can entirely resolve the case, and

5    there's no reason to avoid, in our view, ruling on those

6    motions just so that this case can hang out in the ether while

7    the civil forfeiture action moves forward.

8              THE COURT:  All right.  Thank you very much, sir.

9              Mr. Gianforti, are the parties at the back table

10   correct that resolution of the pending motions to dismiss in

11   the 2019 case would have no impact on your case?

12             MR. GIANFORTI:  I don't see how --

13             THE COURT:  I'll ask the question more pointedly, sir.

14             MR. GIANFORTI:  Sure.

15             THE COURT:  Do you have a horse in the race?

16             MR. GIANFORTI:  I don't think so.

17             THE COURT:  That's fine.  I'll give you the chance to

18   talk if you do; otherwise, tell me no.

19             MR. GIANFORTI:  No, no.  I think -- unless we're

20   talking about discovery and summary judgment, perhaps that has

21   a different -- that's a horse of a different color, if you

22   will.  But I think at the moment there's no reason from the

23   government's perspective why you should or should not resolve

24   the pending motions to dismiss in the petitioner's action.

25             THE COURT:  Okay.  Thank you.
```

O6CVCOMC

1          Anyone else wish to be heard?

2          MR. JACOB:  I just want to note that while I don't

3     disagree with Mr. Gianforti in terms of theory, I do disagree

4     slightly in terms of practice.  Because if you deny the motions

5     to dismiss, as I think you should for the reasons we've

6     briefed, we'll be on the path of discovery parallel with the

7     government, which will be complicated for all the parties — or

8     at least more complicated than it needs to be — but also

9     involves the basic prejudice that I talked about at the outset,

10    which is, we'll be on the course of expending substantial more

11    client resources in a case where if Mr. Gianforti and we both

12    win, as we expect, we lose.  It's not fair and it's not

13    practical.

14          THE COURT:  Okay.  Thank you.

15          I'll just ask for your patience.  Thank you.

16          (Pause)

17          THE COURT:  Thank you very much.

18          I am going to keep the stay in place, and let me

19    explain why.

20          I do appreciate Mr. Sullivan's arguments about delay.

21    And as I may have, in my characteristically diplomatic way,

22    hinted to the government, it's unfortunate that the

23    government's forfeiture complaint is being brought five years

24    after the miscellaneous action was commenced and after several

25    rounds of pretty hotly contested motion practice and pending

O6CVCOMC

1   motions.

2           However, it does cause me concern that there may be a

3   serious waste of resources.  I want to note that this concern

4   that I might have for petitioner is tempered by the fact that

5   they brought the action in the first instance.  But I don't

6   think it's appropriate for them to litigate the 2019 action

7   when there's a 2024 action that can completely obviate the need

8   for them to pursue the 2019 action, that could cause them to

9   dismiss the 2019 action.  And I don't want them to be forced to

10  litigate -- potentially litigate an appeal.

11          If they win the motions to dismiss, we'll be

12  proceeding discovery, which Mr. Gianforti hinted is a horse of

13  a different color.  If they lose the motions to dismiss,

14  they'll be proceeding in an appellate posture all on the shadow

15  of the government's 2024 action going forward.

16          So recognizing that everyone wants to get this matter

17  resolved, I am nonetheless keeping the stay open for the

18  foreseeable future given the pendency of the government's

19  action, and we'll talk again after the motion to dismiss is

20  resolved.

21          From my perspective, that's everything I wanted to

22  address today.

23          Mr. Jacob, anything else you wanted to bring to my

24  attention?

25          MR. JACOB:  No, your Honor.  Thank you.

O6CVCOMC

| | |
|---|---|
| 1 | THE COURT:  Thank you. |
| 2 | Mr. Gianforti? |
| 3 | MR. GIANFORTI:  Just in the interest of not making you |
| 4 | sad, your Honor. |
| 5 | THE COURT:  Thank you. |
| 6 | MR. GIANFORTI:  Let me assure you that the |
| 7 | government's investigation, part of the reason why it took so |
| 8 | many years is because of all of the tire-kicking that we were |
| 9 | doing through warrants, mutual legal assistance treaty |
| 10 | requests, grand jury subpoenas, etc., etc., etc. |
| 11 | I think a fair reading of the complaint, which is much |
| 12 | more detailed than the global witness article, indicates as |
| 13 | much.  So I just wanted to put that on the record so you know |
| 14 | the standards have not slipped since your day at the office, |
| 15 | and we'll continue to pursue this case.  Thank you. |
| 16 | THE COURT:  I appreciate the representations made. |
| 17 | Thank you. |
| 18 | Mr. Alberts, anything to add, sir? |
| 19 | MR. ALBERTS:  No, your Honor. |
| 20 | THE COURT:  I thank you. |
| 21 | Mr. Sullivan, Mr. Ferrante, anything to add? |
| 22 | MR. SULLIVAN:  Nothing, your Honor.  Thank you. |
| 23 | MR. FERRANTE:  Nothing further from me, your Honor. |
| 24 | THE COURT:  Thank you very much. |
| 25 | All right.  Thank you all for coming in this morning. |

O6CVCOMC

1              We are adjourned.   Thank you.

2                                    *    *    *

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25